Not for Publication

United States District Court
for the District of New Jersey

| | |
|---|---|
| BASSAM SALIBA, <br>    *Petitioner*, <br>  v. <br> ATTORNEY GENERAL OF THE UNITED STATES, ET AL., <br>    *Respondents*. | Civil No: 14-6174 (KSH) <br><br> **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

  Petitioner Bassam Saliba seeks review of his naturalization application pursuant to 8 U.S.C. § 1421(c). U.S. Citizenship and Immigration Services ("USCIS") denied his application on January 22, 2013, after it determined that Saliba was not lawfully admitted to the United States and therefore ineligible for naturalization. Respondent, Attorney General of the United States ("the government"), opposes Saliba's petition and moves to dismiss or in the alternative for summary judgment. This Court grants respondent's motion and dismisses the petition for the following reasons.

 **I. Background**

  Bassam Saliba is a native and citizen of Syria. (Petition for Review ("Petition"), ¶6.) He entered the United States on or about December 25, 1988, on a non-immigrant student visa. (Petition, ¶12.) Approximately four years later, in January 1992, Saliba filed for Temporary Protected Status ("TPS")—a temporary immigration status granted to foreign citizens who are unable to return safely to their nation of origin or citizenship. While the briefs do not identify the exact contours of this process, it appears that foreign citizens residing in the United States are permitted to apply for TPS where it is shown that extraordinary and temporary conditions (i.e.,

ongoing armed conflict, environmental disaster) likely will prevent their safe return and their nation of origin is designated for TPS by the Secretary of Homeland Security (formerly the Attorney General).

Significantly, Saliba used falsified documents in his application. He submitted a fraudulent passport and birth certificate, which represented that he was a citizen of Lebanon—a nation then-designated under the TPS program. (Petition, ¶13.)   He was assigned alien registration number ("A Number") 094 215 719 by the former Immigration and Naturalization Service ("INS" or "the Service") and granted TPS and permitted to remain in the United States based on his misrepresentation that he was a citizen of Lebanon. (Petition, Ex. A.)

On July 22, 1999, Saliba submitted a Form I-485 Application to Register Permanent Residence or Adjust Status. (Petition, ¶17.)  This time he correctly represented that he was a native and citizen of Syria. He did not reveal that he previously applied for TPS. (Borgen Decl., Ex. C, Form I-485; Petition, ¶18.)  In connection with this application to adjust status, Saliba submitted: (1) a form showing both that he had been admitted to the United States on an F-1 student visa on December 25, 1988, and that his country of citizenship was Syria; and (2) a Syrian birth certificate and passport. Saliba made other representations on the application itself that are pertinent to this analysis:  he wrote "NONE" in the space requesting the applicant's existing A Number; and he answered "No" to Question 10 on Part 3 of the application, which asked, "[H]ave you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit." (Borgen Decl., Ex. C.)  On February 21, 2001, his application was approved and Saliba's status was adjusted to lawful permanent resident ("LPR"). (Petition, ¶21.)

On February 23, 2006, Saliba applied for naturalization.[1] The adjudicator assigned to his case discovered that Saliba was the same person who had obtained TPS in 1992. USCIS directed Saliba to submit his original birth certificate, his Lebanese passport, and a notarized written statement addressing, among other things, whether he was a citizen of Lebanon. Saliba submitted those materials and attested that he was not a citizen of Lebanon.

On January 22, 2008, USCIS denied Saliba's application for naturalization based on his failure to demonstrate that he was lawfully admitted for permanent residence. Specifically, USCIS "determined that [Saliba was] not 'lawfully admitted to the United States for permanent residence' since at the time of [his] adjustment, [he was] excludable/inadmissible under Section 212(a)(6)(C)(i) of the [INA] which states, 'Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit under this Act is excludable.'" (Borgen Decl., Ex. F.)

After the Service learned of Saliba's apparent fraud, it summoned Saliba to appear before an Immigration Judge for removal proceedings. The notice to appear informed Saliba: "In January of 1992, you applied for Temporary Protective Status as a citizen of Lebanon. To establish

---

[1] As is relevant to Saliba's application, § 316 of the Immigration and Naturalization Act provides that:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a).

eligibility, you submitted a fraudulent Lebanese passport and a fraudulent Lebanese birth certificate." On that basis, the Service submitted that Saliba was "subject to removal from the United States." (Petition, Ex. A, at 2.) This removal proceeding was later terminated on July 8, 2009, following the Third Circuit's decision in *Garcia v. Attorney Gen. of the United States*, 553 F.3d 724 (3d Cir. 2009), which established a five-year limitation for rescinding permanent residency.

On March 19, 2012, Saliba submitted a second application for naturalization, which was denied by USCIS for the same reasons as his first—that his submission of false papers representing that he was a citizen of Lebanon rendered him statutorily inadmissible, and therefore not "lawfully admitted" as a legal permanent resident. That determination was later reaffirmed on June 5, 2014, and Saliba filed this action on October 3, 2014. In his petition to this Court, Saliba seeks an order declaring that his naturalization application must be granted. The government moves for dismissal of the petition on grounds that it fails to state a claim upon which relief may be granted or, alternatively, because there are no material facts in dispute and the government is entitled to judgment as a matter of law. (D.E. 5.)

## II. Legal Standards

The Government moves to dismiss the petition or, alternatively for summary judgment. When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based on those documents, and matters of public record. While the discussion that follows refers to materials outside the pleadings, all such references are either expressly identified in Saliba's petition or are matters of public record. Accordingly, the Court

declines to convert the government's motion to one for summary judgment and rules on the pleadings.

The Federal Rules require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This language requires that the complaint satisfy a "plausibility" standard in order to survive dismissal under Fed. R. Civ. P. 12(b)(6). The complaint therefore must "set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]'" do not suffice, nor do "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id*. at 210 (quoting *Iqbal*, 556 U.S. at 678). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court takes as true the factual allegations in the complaint and disregards legal conclusions. *See Fowler*, 578 F.3d at 210-11.

### III.   Standard for Judicial Review Under 8 U.S.C. § 1421(c)

In a naturalization proceeding, the individual seeking to obtain the rights and privileges of U.S. citizenship bears the burden to prove by a preponderance of the evidence that he is so eligible. *See INS v. Pangilinan*, 486 U.S. 875, 886 (1988); *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967) ("[I]t has been universally accepted that the burden is on the alien to show his eligibility for citizenship in every respect."). Significantly, and given the weight of the privilege itself, the Supreme Court has held that, "when doubts exist concerning a grant of [citizenship], generally at least, they should be resolved in favor of the United States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928); *see also Ogundoju v. Attorney Gen. of the United States*, 390

F. App'x 134, 137 (3d Cir. 2010) ("A person claiming United States citizenship bears the burden of establishing his eligibility, and all doubts are resolved in favor of the United States and against the claimant.")

Judicial review of naturalization proceedings is provided for under 8 U.S.C. § 1421(c): "A person whose application for naturalization . . . is denied . . . may seek review of such denial before the United States district court" in accordance with the Administrative Procedure Act, 5 U.S.C. § 701. This review is *de novo*, and the Court is responsible for making its own findings of fact and conclusions of law. 8 U.S.C. § 1421(c); *see also Abulkhair v. Bush*, 413 F. App'x 502, 508 (3d Cir. 2011).

### IV. Discussion

The government maintains that Saliba was not "lawfully admitted" under 8 U.S.C. § 1427(a) because he was granted an immigration benefit (TPS) by reason of fraud or willful misrepresentation (submission of Lebanese papers) and was therefore statutorily "inadmissible" and prohibited from adjusting his status to that of a permanent legal residence. The Court agrees.

In order to obtain legal permanent resident status, Saliba must have been "admissible" at the time of adjustment. This requirement stems from 8 U.S.C. § 1255(a)(2), which provides that "[t]he status of an alien . . . may be adjusted . . . to that of an alien lawfully admitted for permanent residence if . . . the alien is eligible to receive an immigrant visa *and is admissible to the United States for permanent residence*." 8 U.S.C. § 1255(a)(2) (emphasis added). Saliba fails to satisfy this requirement because, at the time he was adjusted to LPR status, he was statutorily "inadmissible" by reason of his fraudulent procurement of TPS status nine years earlier. His petition essentially concedes this point where Saliba admits that, in connection with his application

for TPS status in 1992, he "submitted falsified documents which stated he was a citizen of Lebanon." (Petition, ¶13.)

Without these documents, Saliba would not have been eligible for TPS because Syria (his actual nation of origin) was not designated for the program until March 29, 2012.[2] Saliba's misrepresentation as to his citizenship was thus material to his procurement of an immigration "benefit" and rendered him "inadmissible" under 8 U.S.C. § 1182(a)(6)(C)(i). *See Aoko v. Holder*, 518 F. App'x 169, 176 (4th Cir. 2013) ("It is undisputed that citizenship is a 'material fact,' and that TPS is an 'other benefit'" under the statute.); 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, . . . has procured . . . a visa, other documentation, or admission into the United States or other benefit provided under this Act is *inadmissible*.") (emphasis added).

Because a finding of inadmissibility under § 1182(a)(6)(C)(i) is a mandatory ground for denial of adjustment of status, the government argues that Saliba was not "lawfully admitted for permanent residence" at the time of adjustment and therefore ineligible for naturalization under Section 316(a). 8 U.S.C. § 1427(a) ("No person . . . shall be naturalized unless such applicant . . . has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . .") The phrase "lawfully admitted" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws," 8 U.S.C. § 1101(a)(20), and has consistently been interpreted to require "compliance with substantive legal requirements, not mere procedural regularity." *In re Koloamatangi*, 23 I. & N. Dec. 548, 551 (BIA 2003); *see also Gallimore v.*

---

[2] *See* Designation of Syrian Arab Republic for Temporary Protected Status, CIS No. 2522-12; DHS Docket No. USCIS 2012-0007 ("Through this notice, the Department of Homeland Security (DHS) announces that the Secretary of Homeland Security (Secretary) has designated Syrian Arab Republic (Syria) for Temporary Protected Status for a period of 18 months, effective March 29, 2012 through September 30, 2013.")

*Attorney Gen. of the United States*, 619 F.3d 216, 224 n.6 (3d Cir. 2010) (collecting cases adopting *Koloamatangi*'s interpretation of the phrase "lawfully admitted"). If he was not so entitled "at the time such status was accorded," the "alien is deemed, *ab initio*, never to have obtained lawful permanent resident status." *Koloamatangi*, 23 I. & N. Dec. at 550-51; *see also Arellano-Garcia v. Gonzales*, 429 F.3d 1182, 1187 (8th Cir. 2005) ("[T]he agency's interpretation of 'lawful,' . . . is reasonable and applies not only where there has been fraud in the procurement of the adjusted status, but also to a situation where the alien was not entitled to an adjustment but received it by a negligent mistake of the agency.").

The government maintains that, because Saliba became statutorily "inadmissible" under § 1182(a)(6)(C)(i) after fraudulently obtaining TPS, he was ineligible for LPR status unless the grounds of admissibility were waived in accordance with the requirements of INA Section 212(i), 8 U.S.C. § 1182(i). That section waives inadmissibility for fraud or willful misrepresentation of a material fact only where the inadmissible immigrant is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence *and* where it is shown that refusal of admission of that immigrant would result in extreme hardship to the citizen or resident spouse/parent. 8 U.S.C. § 1182(i)(1).

As a threshold matter, Saliba does not argue that he specifically applied for such a waiver. Rather, he claims that an issue of fact exists as to whether or not the INS was aware of his fraudulent TPS application at the time he was approved for legal permanent residence. Saliba points to the copy of his I-485 Application for LPR produced by the government, which reflects the A number he was assigned during the adjudication of his TPS application. That number was handwritten in red ink, crossed through in dark colored ink, and seemingly replaced with a different A number, also in dark colored ink, written above the first. From these markings, Saliba maintains

that "USCIS was made aware of [his] prior A number, the circumstances, and either waived the inadmissibility or, appropriately, determined that there was no willful misrepresentation or fraud to cause inadmissibility, rendering [Saliba] statutorily eligible to adjust his status." (Saliba Br. at 4.)

The government submits that "there is no evidence in the record that explains when in the adjudication process the alien registration numbers … were written" and that Saliba's arguments regarding a potential waiver are entirely conjectural. (Government Reply at 6.) Critically, even if the INS was aware of Saliba's TPS application when it adjudicated the application to adjust status, he was ineligible for a waiver under 8 U.S.C. 1182(i), and the Service did not have the legal authority to waive inadmissibility on any other grounds. As the government argues, "there is no allegation in the Petition, and there is no evidence in the record, that establishes that [Saliba] either applied for, or met the substantive requirements for, a waiver of grounds of inadmissibility." (Government's Br. at 17.) The Court agrees and therefore finds that no waiver of inadmissibility was obtained.

In *Monge v. Holder*, No. 09-4949, 2010 WL 3907363 (D.N.J. Sept. 29, 2010) (Wolfson, J.), Christian Uriel Monge, was a citizen and resident of Costa Rica who entered the United States with a visitor visa in 1995. He applied for legal permanent resident status one year later, but left the country without advance parole while his application was pending. Upon returning to the United States, he applied for LPR status a second time and was approved shortly thereafter. DHS later denied his application for naturalization, finding that, because he was "not granted advance parole prior to [his] departure, [his I-485 Application] was abandoned." *Id.* at *2. His application for LPR status was thus "granted in error," and he had "not been lawfully admitted to the United States for permanent residence." *Id.* This decision was based on 8 C.F.R. § 245.2(a)(4)(ii), which

provides that "the departure [from the United States] of an applicant . . . shall be deemed an abandonment of the application constituting grounds for termination of any pending application for adjustment of status, unless the applicant was previously granted advance parole by the Service for such absences." On review, the district court affirmed DHS's decision and found that, because Monge left the country in violation of this provision, he was improperly granted LPR status and consequently was not "lawfully admitted" as a legal permanent resident for the purposes of naturalization. *Id.* at *5-6.

In so ruling, the district court rejected two purported defenses that Saliba raises here. First, the court rejected petitioner's argument that "even if he was not lawfully admitted as a LPR due to a mistake by the DHS, this does not constitute ineligibility to naturalize because [the government] failed to rescind his LPR status within a five (5) year window." *Id.* at * 5. The *Monge* court found, consistent with other courts, that the *Garcia* decision is limited to removal/rescission proceedings and has no application to petitions for naturalization. *Id.* at *5. A similar conclusion was reached in *Shah v. Thompson,* No. 11-3082, 2015 WL 113339, at *5 (D.N.J. Jan. 8, 2015) (Martini, J.). There the court found that *Garcia* prohibits the government from "commenc[ing] deportation proceedings against an alien or rescind[ing] that alien's permanent resident status five years after the alien obtained an adjustment," but does not "disturb the well-settled principle that the 'lawfully admitted for permanent residence' requirement is not met when an alien's adjustment does not comply with the immigration laws." *Id.* at *5 (citation omitted). Second, the *Monge* court found no merit in petitioner's equitable plea that "DHS was aware that he'd left the United States" when it approved his application for legal permanent residence. *Monge*, 2010 WL 3907363, at *5. The court refused to acknowledge this argument in equity for the same reason that this Court rejects Saliba's contention that his inadmissibility was

constructively waived by reason of DHS's alleged and undocumented awareness of his fraudulent TPS application: "[c]itizenship can only be obtained through compliance with the immigration laws, and compliance must be strict." *Id.* at *6 (alteration in original) (citation and internal quotation marks omitted); *see also* 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise."); *Pangilinan*, 486 U.S. at 883-84 ("[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equity powers.").

Saliba fraudulently obtained TPS status and was later granted legal permanent residency notwithstanding his ineligibility for that adjustment. The Third Circuit instructs that "an alien whose status has been adjusted to LPR—but who is subsequently determined to have obtained that status adjustment through fraud—has not been 'lawfully admitted for permanent residence.'" *Gallimore*, 619 F.3d at 223 (citation and internal quotation marks omitted). Consequently, Saliba was not "lawfully admitted" under Section 316(a) of the INA when he applied for naturalization and his application was properly denied. *See De La Rosa v. DHS*, 489 F.3d 551, 555 (2d Cir. 2007) (citation and internal quotation marks omitted) (finding that, because the petitioner "failed to show that she had complied with the relevant substantive legal requirements [the Immigration Judge] correctly determined that she had not been lawfully admitted for permanent residence."). Saliba's petition therefore is dismissed.

### V.     Conclusion

Based on the foregoing, the government's motion to dismiss Saliba's petition is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden
Date: September 18, 2015                                        Katharine S. Hayden, U.S.D.J.